DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@holdenlegal.com
Amanda E. Ulrich, Esq. (ISB No. 7986)
aulrich@holdenlegal.com
HOLDEN KIDWELL HAHN & CRAPO, P.L.L.C.
P.O. Box 50130
1000 Riverwalk Drive, Suite 200
Idaho Falls, ID 83405
Telephone: (208) 523-0620
Facsimile: (208) 523-9518

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| VICTORIA L. BLAIR,<br><br>      Plaintiff,<br>v.<br><br>RADIAL FIRST CARDIOVASCULAR ASSOCIATES, LLC, an Idaho limited liability company,<br><br>      Defendant. | Case No. 4:17-cv-00331-CWD<br><br>**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiff Victoria L. Blair ("Plaintiff"), by and through her counsel of record, Holden, Kidwell, Hahn & Crapo, P.L.L.C., and as a cause of action against Radial First Cardiovascular Associates, LLC, an Idaho limited liability company, alleges and complains as follows:

### JURISDICTION AND VENUE

1. This is an action brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and the Idaho Wage Claim Act, Idaho Code §§ 44-1501, *et seq.*, and 45-601, *et seq.*

2. This Court has jurisdiction of the subject matter under 28 U.S.C. §§ 1331 and 1367.

3. The events giving rise to Plaintiff's claim occurred in Bonneville County, Idaho.

4. Venue is proper in the Eastern Division of the District of Idaho under 28 U.S.C. § 1391(b) and Local Civil Rule 3.1, because the claims arose in this judicial district.

## PARTIES

5. Plaintiff is a citizen of the United States of America who was, at all times relevant hereto, a resident of Bonneville County, Idaho.

6. Defendant Radial First Cardiovascular Associates, LLC ("Defendant") is an Idaho limited liability company doing business in Bonneville County, Idaho.

7. Defendant is a healthcare company that provides medical, therapeutic, and diagnostic services from its main office in Idaho Falls, Idaho, and a satellite office in Afton, Wyoming.

8. At all times material to this Complaint and Demand for Jury Trial (this "Complaint"), Defendant was engaged in an industry affecting commerce, bringing Defendant within the ambit of Idaho Code §§ 44-1501, *et seq.*, and 45-601, *et seq.*; and 29 U.S.C. § 201, *et seq.*

## GENERAL ALLEGATIONS

9. Plaintiff realleges and incorporates by reference paragraphs 1 through 8 as though fully set forth herein.

10. Plaintiff has lived and worked in Idaho Falls, Idaho as a registered nurse and licensed nurse practitioner for approximately 25 years. Plaintiff has worked extensively with children and adults, developing a specialty in family medicine.

11. By the end of 2015, Plaintiff had developed an extensive clientele in the area of family medicine.

12. In early 2016, one of Plaintiff's friends—who already worked for Defendant—told Plaintiff about an opportunity for Plaintiff to join Defendant's business and move her practice to Defendant's Idaho Falls office.

13. Plaintiff inquired with Defendant and, after negotiations, agreed to work for Defendant, who was looking for a family nurse practitioner to join Defendant's cardiology practice to add family medicine that encompasses medicine from pediatrics to geriatrics.

14. Plaintiff began working for Defendant on or about March 1, 2016, at Defendant's Idaho Falls office.

15. Defendant was aware that Plaintiff had privileges at Mountain View Hospital, including the Nursery, so that Plaintiff could perform newborn examinations.

16. While there was no written employment agreement, Plaintiff and Defendant orally agreed to terms of employment. This oral employment agreement included the following terms:

    a. Plaintiff agreed to work for Defendant and provide services, including bringing her established practice and clientele to Defendant's Idaho Falls office.

    b. Defendant agreed to pay Plaintiff a bi-monthly salary of $2,916.67.

    c. Defendant agreed to provide Plaintiff's malpractice insurance.

17. Defendant scheduled all of Plaintiff's patients, including numerous pediatric patients.

18. Plaintiff saw and treated these patients in Defendant's Idaho Falls office.

19. Defendant purchased a toy tower and placed it in Defendant's lobby for the use and entertainment of pediatric patients while they waited.

20. Defendant knew of, purchased, and commented on pediatric equipment, such as an infant scale and infant blood testing supplies, that were kept at Defendant's Idaho Falls office in support of Plaintiff's established family practice.

21. Defendant only paid Plaintiff three times—for pay periods from July 16, 2016, through August 31, 2016. Each of these paychecks was in the bimonthly, agreed amount of $2,916.67, meaning Defendant paid Plaintiff a grand total of $8,750.01.

22. From March 1, 2016, through July 15, 2016—a four-and-a-half month period—Plaintiff was not paid by Defendant.

23. Plaintiff spoke to another practitioner who worked for Defendant about why she had not been paid and Plaintiff's co-worker indicated she experienced the same thing, but Defendant was good for it.

24. For the time period from March 1, 2016, through July 15, 2016, Defendant should have paid Plaintiff $2,916.67 per pay period for nine pay periods, for a total of $26,250.03.

25. Plaintiff has made repeated demands to Defendant to pay her the wages due and Defendant has refused.

26. Only after Plaintiff agreed to be employed under the terms described above and Plaintiff had treated these pediatric patients at appointments scheduled by Defendant and at Defendant's Idaho Falls office for a period of approximately five (5) months, did Defendant demand that Plaintiff cease her pediatric practice as, Defendant claimed, that its malpractice insurance did not cover such a practice and that Defendant had never approved treatment of Plaintiff's pediatric patients.

27. On September 7, 2016, Plaintiff had no choice but to resign after Defendant falsely accused her of seeing pediatric patients without approval even though Defendant set the appointments.

28. Plaintiff provided business cards to Defendant's receptionist, providing Plaintiff's contact information at her next practice so that Defendant could provide Plaintiff's patients her contact information.

29. On or about October 3, 2016, Defendant sent a letter to all of Plaintiff's patients telling them that Plaintiff was no longer practicing there, but a new physician, Joseph Weatherly, DO, had joined its practice to provide family medicine. Even before Plaintiff had resigned, Defendant began referring Plaintiff's patients to Dr. Weatherly.

30. When Plaintiff's patients called to see her, Defendant falsely told them that they did not know where Plaintiff was practicing or have contact information for her.

## COUNT ONE
## VIOLATION OF THE FAIR LABOR STANDARDS ACT

31. Plaintiff realleges and incorporates by reference paragraphs 1 through 30 as though fully set forth herein.

32. Defendant is an employer covered by the requirements set forth in the Fair Labor Standards Act ("FLSA").

33. Defendant failed to pay Plaintiff her salary pursuant to their oral employment agreement for the period from March 1, 2016, through July 15, 2016.

34. Because Defendant improperly refused to pay Plaintiff's salary, Defendant's method of compensating Plaintiff did not qualify for any exemption from the wage obligations imposed by the FLSA.

35. Throughout Plaintiff's employment, Defendant knew it was obligated to pay Plaintiff's salary. In spite of such knowledge, Defendants willfully withheld and failed to pay the wages to which Plaintiff is entitled.

36. Pursuant to the FLSA, Plaintiff is entitled to compensation for the wages withheld by Defendant from Plaintiff's salary.

37. The amount of unpaid compensation Defendant has failed to pay to Plaintiff is $26,250.03, which Plaintiff has demanded from Defendant.

38. Defendant's failure to pay Plaintiff her wages due is not based on good faith or reasonable grounds, or a belief that such failure is not in violation of the FLSA. Therefore, pursuant to 29 U.S.C. § 216(b), Plaintiff is also entitled to liquidated damages in an amount equal to the compensation she was not paid.

## COUNT TWO
## VIOLATION OF THE IDAHO WAGE CLAIM ACT

39. Plaintiff realleges and incorporates by reference paragraphs 1 through 38 as though fully set forth herein.

40. Defendant failed to pay Plaintiff her salary to which she was entitled for the period from March 1, 2016, through July 15, 2016.

41. Defendant's failure to pay Plaintiff her salary to which she was entitled is a violation of the Idaho Wage Claim Act, Idaho Code §§ 44-1501, *et seq.*, and 45-601, *et seq.*

42. Plaintiff is entitled to recover from Defendant the amount of unpaid salary due and owing plus penalties, or damages in the amount of three times the amount of unpaid salary, whichever is greater.

## ATTORNEY'S FEES

As a further direct and proximate result of each Defendants' actions or omissions, Plaintiff has been compelled to retain the services of counsel, and has thereby incurred, and will continue to incur costs, expert witness fees, and attorney's fees, which Defendant should be required to pay under Idaho Code §§ 12-120(3), 45-615 and 29 U.S.C. § 216(b).

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury as to all issues in this action triable to a jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff seeks judgment against Defendant as follows:

A. For compensatory damages as well as statutorily available damages in an amount as shall be proven at trial;

B. For liquidated, treble or punitive damages, and any civil or delay penalties;

C. For attorney's fees pursuant to statute and for the costs of this lawsuit;

D. For prejudgment interest on all amounts claimed; and

E. For such other and further relief as this Court deems just and proper.

Dated this 23rd day of August, 2017.

/s/
DeAnne Casperson
HOLDEN, KIDWELL, HAHN & CRAPO, P.L.L.C.

G:\WPDATA\DC\19280 Blair, Victoria\Pleadings\Complaint.Amended.docx